**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-01690-001-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Ryan Patrick Michell, | |
| Defendant. | |

Pending before the Court is Defendant Ryan Patrick Michell's Motion to Suppress (Doc. 31). The Court denies the motion.

## BACKGROUND

Federal law enforcement attested to the following facts in an application for a search warrant of Defendant Ryan Patrick Michell's property. On October 24, 2017, Defendant Michell contacted an undercover law enforcement officer via an online, hidden-service market in an attempt to purchase potassium cyanide and dimethyl mercury. Over the next few weeks, Defendant Michell and the officer discussed various aspects of the chemicals, such as price, quantity and purity. Mr. Michell stated that he planned to use the chemicals for gold extraction, and he eventually purchased one hundred grams of potassium cyanide, which he purchased using Bitcoin. Mr. Michell had the potassium cyanide delivered to his home, addressing the package to "K.F.", which are the initials of the property's previous tenant.

The warrant application also requested a search for firearms and ammunition. In 1996, Arizona law enforcement arrested Mr. Michell for aggravated assault. Although Mr. Michelle was a minor at the time, his case was transferred to adult court, and Mr. Michell pled guilty and received a two-year prison sentence. In April 2015, Mr. Michell posted two pictures on his Facebook account in which he was shooting a rifle. In May 2016, Mr. Michell posted another picture of a rifle and included this caption, "Went out to practice with my AR-10 today! . . . It is a great addition to our collection." (Doc. 36, Exh. 1, *SW* ¶ 30).

On December 1, 2017, Magistrate Judge Bridget Bade authorized a warrant for law enforcement to search Defendant Ryan Patrick Michell's one-story home for items associated with chemical weapons and firearms and ammunition.

## DISCUSSION

### I. Legal Standard

The Fourth Amendment requires that search warrants be based "upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized." The duty of a reviewing court is simply to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 214 (1983). The task of the issuing judge is "to make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* When interpreting seemingly innocent conduct, the court issuing the warrant is entitled to rely on the training and experience of police officers. *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995); *United States v. Arrellano—Rios*, 799 F.2d 520, 523 (9th Cir. 1986) ("The experience of a trained law enforcement agent is entitled to consideration in determining whether there was probable cause."). The issuing judge considers "the totality of the circumstances" in its decision. *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991). In borderline cases, preference will be accorded to warrants and to the decision of the judge issuing it. *United*

*States v. Krupa*, 658 F.3d 1174, 1179 (9th Cir. 2011).

**II.      Analysis**

     **A.      Chemical Weapons**

The warrant application listed 18 U.S.C. § 229(a) in Attachment B of the warrant as a basis for its search. (Doc. 36, Exh. 1 at 6). This section prohibits the use of chemical weapons and makes it unlawful "to develop, produce, otherwise acquire, transfer directly or indirectly, receive, stockpile, retain, own, possess, or use, or threaten to use, any chemical weapon . . . ." The statute defines "toxic chemical" as "any chemical which through its chemical action on life processes can cause death, temporary incapacitation or permanent harm to humans or animals." *Id.* at § 229F(8)(A). The statute allows for ownership of such chemicals for "[p]urposes not prohibited by this chapter," which encompasses "[a]ny peaceful purpose related to an industrial, agricultural, research, medical, or pharmaceutical activity or other activity." *Id.* at § 229F(7)(A); *see also Bond v. U.S.*, 134 S. Ct. 2077, 2092 (2014) (citing to a prosecution of potassium cyanide possession as an example of a prosecution under 18 U.S.C. § 229 of an extremely dangerous substance). The warrant application included a section on 18 U.S.C. § 229 where it described the prohibited use of chemical weapons, the definition of a toxic chemical, and the definition of prohibited use of these chemicals. (Doc. 36, Exh. 1, *SW* ¶¶ 34–37). The warrant application also described the potential malicious use of potassium cyanide and dimethyl mercury. (Doc. 36, Exh. 1, *SW* ¶¶ 24–25). Mr. Michell argues that because the mere purchase and possession of potassium cyanide is not a crime, the government lacked probable cause that Mr. Michell would use the potassium cyanide as a chemical weapon.

A series of legal acts may provide the basis for probable cause of illegal acts. As the Ninth Circuit has described, innocent acts, which "if reviewed separately, might be consistent with innocence," may establish probably cause if "considered as a totality, would likely create a fair probability of suspicion in any person of average acumen and experience." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991) (quoting

*United States v. Hoyos*, 892 F.2d 1387, 1393 (9th Cir. 1989)).

In the warrant application, the FBI Special Agent testified that Mr. Michell participated in the following activities. Mr. Michell used a hidden service website to solicit the purchase of potassium cyanide and dimethyl mercury, even though these chemicals are available at much cheaper prices in public forums. (Doc. 36, Exh. 1, *SW* ¶¶ 4–6, 25). Mr. Michell used the essentially non-traceable Bitcoin cryptocurrency to purchase the chemicals. (Doc. 36, Exh. 1, *SW* ¶ 17). Mr. Michell used the initials of a former tenant of his property for shipping the potassium cyanide. (Doc. 36, Exh. 1, *SW* ¶¶ 17–18). Mr. Michell ensured that his communication with the seller was secured and encrypted. (Doc. 36, Exh. 1, *SW* ¶ 15). Although Mr. Michell stated that he planned to use the chemicals for gold extraction, he did not own or participate in a laboratory business or metal extraction business. (Doc. 36, Exh. 1, *SW* ¶¶ 11, 21). The undercover agent did not ship dimethyl mercury to Mr. Michell, but Mr. Michell repeatedly asked to purchase it and said that he would "continue to regularly buy" dimethyl mercury. (Doc. 36, Exh. 1, *SW* ¶¶ 11–16). Dimethyl mercury is highly toxic and a single drop may threaten someone's life. (Doc. 36, Exh. 1, *SW* ¶ 23). Contrary to Mr. Michell's claims, dimethyl mercury is not used for gold extraction. It has few legitimate applications and is primarily used for chemical research. (Doc. 36, Exh. 1, *SW* ¶ 23). Mr. Michell purchased one hundred grams of potassium cyanide, which is enough to poison many individuals if mixed in a drinkable liquid. (Doc. 36, Exh. 1, *SW* ¶ 24). Although an individual may legally possess potassium cyanide, the affiant, who is experienced as the Phoenix Division Weapons of Mass Destruction Coordinator, said that these activities established probable cause that Mr. Michell was illegally acquiring, possessing, or using a toxic chemical for a prohibited purpose. (Doc. 36, Exh. 1, *SW* ¶¶ 1–2).

Magistrate Judge Bade rightfully considered the totality of the circumstances and relied on the training and experience of law enforcement when interpreting otherwise legal conduct. *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991); *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995). In review of the above facts, Judge Bade had

a substantial basis to authorize the search of Defendant Michell's for materials associated with chemical weapons.

### B. Firearms and Ammunition

The warrant application also listed 18 U.S.C. § 922(g) as a basis for its search. This section prohibits certain individuals, including those who have "been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year" from possessing any firearm or ammunition. The warrant application stated that Mr. Michell was convicted of three felony violations before he posted photographs on the internet of himself shooting rifles. (Doc. 36, Exh. 1, *SW* ¶ 26–28, 31). On review, the government admitted that this statement was inaccurate, and that only one of the felony convictions occurred before the photographs were posted on the internet.

To challenge a warrant on the basis of a false statement, a defendant must show that the false statement is necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 172 (1978). The mistake is immaterial if "there remains sufficient content in the warrant affidavit to support a finding of probable cause" after the mistake is set aside. *Id.*

Although Mr. Michell rightfully points out that he was convicted of the last two of his felony convictions after the photographs were taken, the first of these felony convictions occurred in 1996 when Mr. Michell was convicted of aggravated assault and received a two year sentence. (Doc. 36, Exh. 2). Independent of the subsequent felonies, this felony conviction made Mr. Michell a prohibited possessor, and the mistake in the warrant application is immaterial. The photographs of him shooting a rifle and the caption that he had an AR-10 battle rifle therefore support a substantial basis for a warrant searching his residence for evidence that Mr. Michell was a felon in illegal possession of a firearm or ammunition.

/ / /

/ / /

/ / /

**IT IS HEREBY ORDERED** that Defendant Ryan Patrick Michell's Motion to Suppress (Doc. 31) is **DENIED.**

Dated this 5th day of June, 2018.

_____
Honorable G. Murray Snow
United States District Judge